In re Douglas C. **FRYER** and Kimberly L. Fryer, Debtors.

**Seedling Landscaping & Design, Inc., Plaintiff,**

v.

**Douglas C. Fryer and Kimberly L. Fryer, Defendants.**

**Bankruptcy No. 01–27200–BM.**
**Adversary No. 01–2510–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 7, 2003.

---

Jeffrey W. Naponic, Esq., for Plaintiff.

Michael C. Eisen, Esq. and J. Lauson Cashdollar, Esq., Beaver, PA, for Debtors/Defendants.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

The outcome of this adversary action hinges to a large extent on who owns certain assets, some of which debtor Douglas Fryer transferred to third parties with-in one year of the filing of debtors' bankruptcy petition and others of which were under his control as of the filing.

Plaintiff Seedling Landscaping & Design Inc. (hereinafter "Seedling") asserts that the assets in question were owned either by it or by debtors. If the assets were owned by it, Seedling seeks an order directing debtors to return to it the assets still under their control. If any of the assets were owned by debtors, Seedling contends that debtors transferred and/or concealed the assets with intent to defraud their creditors and, as a consequence, they either should be denied a discharge or their case should be dismissed with prejudice.

For reasons set forth in this memorandum opinion, we will enter a judgment in favor of debtors and against Seedling.

### – FACTS –

The facts of this case are sketchy at best.

Debtor Douglas Fryer began working for Seedling prior to December of 1999, when Seedling was under the control of Robert Keenan, the deceased brother of Charles Keenan.

Charles Keenan took over control of Seedling from his brother in December of 1999 and acquired all of its shares of stock in April of 2000. He turned Seedling's day-to-day operations over to debtor Douglas Fryer after the acquisition was consummated.

Debtor Douglas Fryer left Seedling in September or October of 2000 and went to work for Marion Hill Construction. He took certain vehicles and equipment with him when he left. After a few months he left the employ of Marion Hill Construction. What he did after that is not indicated in the record.

Within one year of debtors' bankruptcy filing, debtor Douglas Fryer transferred to Marion Hill Construction several of the vehicles he took with him when he left Seedling. The vehicles in question were a 1981 International dump truck, a 1978 GMC pickup truck, and a 1999 Winston trailer. Debtor Douglas Fryer also transferred to other third parties certain other vehicles he took with him when he left Seedling. For instance, he sold a 1987 Ford Ranger to an individual and traded in a 1977 Stakeboy for a trailer and a 1980 Dresser high-lift for a Volvo tractor.

Debtor Douglas Fryer also retained possession and control of certain other items when he left Seedling—e.g., a computer, a pressure washer, a generator, and a welder. These items were still under his control on July 10, 2001.

Debtors filed a voluntary joint chapter 7 petition on July 10, 2001. The schedules accompanying the petition disclosed assets with a total declared value of $16,375.00 and liabilities totaling $44,365.79. None of the above-identified assets debtor Douglas Fryer took with him when he left Seedling were listed on the schedules as estate assets. Moreover, none of the above transfers were identified in debtors' statement of financial affairs.

Seedling commenced this adversary action by filing a complaint on November 20, 2001. The matter was tried, at which time both sides were given an opportunity to offer evidence on the issues in the case.

## – DISCUSSION –

The legal theory under which Seedling has proceeded in this case as well as the relief it seeks are not obvious.

In its woefully abbreviated complaint, Seedling lists in paragraph 4 various assets which debtors did not disclose on their bankruptcy schedules. It asserts that debtors committed bankruptcy fraud by failing to disclose these assets on their schedules and/or any transfers thereof. Seedling asks in its prayer for relief that debtors be ordered to return any property under their control which belongs to it and that their bankruptcy case be dismissed with prejudice.

Seedling asserts in its pretrial stipulation that debtors committed bankruptcy fraud by failing to disclose as assets on their bankruptcy schedules the various items listed in paragraph 4 of its complaint and/or by failing in their statement of financial affairs to disclose any transfers thereof. Seedling identifies three issues which it claims must be decided: (1) whether debtors committed bankruptcy fraud by failing to disclose these items as assets or by failing to disclose any transfers thereof; (2) whether debtors are in possession of Seedling's property; and (3) whether debtors' case should be dismissed for fraudulent acts and/or conveyances.

As was indicated in the prefatory remarks of this memorandum opinion, we understand Seedling as requesting an order directing debtors to return to Seedling any of its assets which are under their control. If any of the items listed in paragraph 4 of the complaint are debtors' assets, Seedling requests that debtors' bankruptcy case be dismissed with prejudice or that they be denied a discharge for transferring certain of those assets to third parties within a year of the bankruptcy filing and for failing to disclose those transfers as well as those assets which they retained.

### Whose Assets Were They?

Seedling first asserts that the items listed in paragraph 4 of its complaint are its property and requests an order directing debtors to return them to Seedling.

Seedling, which unquestionably had the burden of proving whose assets they were, has not established to our satisfaction whose assets **any** of the items listed in paragraph 4 of its complaint were. We found the testimony of Charles Keenan, who testified that they belonged to Seedling, not helpful in this regard.

Time and again at trial, Charles Keenan conceded on cross-examination that he did not know whether Seedling had purchased any of the items in question. He could testify from personal knowledge only that the items were on site when he took over control of Seedling in December of 1999, and that certain of the vehicles on the list were covered by Seedling's insurance policy. Without something more, such testimony in our estimation does not suffice to establish that any of the items in question belonged to Seedling when debtor Douglas Fryer left Seedling and took them with him to Marion Hill Construction.

It is not possible to determine what transpired prior to Charles Keenan's assumption of Seedling's reins in December of 1999. When Charles Keenan took over control from his now deceased brother, Seedling's affairs were in considerable disarray. Seedling's books and records, which it failed to establish had been taken by debtor Douglas Fryer, were never found. So deficient was Charles Keenan's testimony, we are not able to say *one way or the other* whether specific items listed in paragraph four of the complaint were Seedling's assets or debtors' assets. In light of this, we must deny Seedling's request for an order directing debtors to turn over to it any of the items listed in paragraph 4 of the complaint which are under their control.

### Should Debtors Be Denied A Discharge?

With certain enumerated exceptions, § 727(a) of The Bankruptcy Code provides that a debtor shall receive a discharge. It provides in part as follows:

(a) The court shall grant the debtor a discharge, unless—. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor, . . . has transferred . . . [or] concealed . . .—

(A) property of the debtor, within one year before the date of the filing of the petition . . . .

11 U.S.C. § 727(a)(2)(A).

Although Seedling has not expressly so asserted, the language it employs in characterizing debtors' conduct closely tracks the language of § 727(a)(2)(A). Proceeding out of an abundance of caution, we will consider whether, based on the evidence adduced at trial, debtors should be denied a discharge in accordance with § 727(a)(2)(A).

■ Section 727(a) should be construed liberally in favor of a debtor in bankruptcy and against a party objecting to the debtor's discharge. Applying one of the exceptions to discharge is an extreme measure and must not be undertaken lightly. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993).

■ A party objecting to a debtor's discharge bears the initial burden of proving that the case falls within one of the exceptions found at § 727(a). They must prove facts essential to that particular exception. *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir.1992).

■ The exception to discharge found at § 727(a)(2)(A) is comprised of two basic components: an act (e.g., a transfer or concealment); and an improper motive (i.e., a subjective intent to hinder, defraud, or delay a creditor). *Rosen*, 996 F.2d at 1531. The objecting party must establish the presence of both of these components during the one-year period preceding

bankruptcy; anything occurring outside of the one-year period "is forgiven". *Id.*

■ To prevail under § 727(a)(2)(A), Seedling must prove that: (1) the debtor; (2) transferred or concealed; (3) debtor's property; (4) with intent to hinder, delay, or defraud a creditor; (5) within one year prior to the bankruptcy filing. *In re Kontrick,* 295 F.3d 724, 736 (7th Cir.2002).

■ The required intent must be actual; constructive fraud will not suffice. *Groman v. Watman (In re Watman),* 301 F.3d 3, 8 (1st Cir.2002). Because it is difficult to prove by direct means, actual intent may be inferred from circumstantial evidence. *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 684 (6th Cir.2000).

■ A debtor may be denied a discharge in accordance with § 727(a)(2)(A) even though no creditor was harmed by the transfer or concealment. Proof of harm, in other words, is not required. *Id.*

■ We noted previously that, based on the evidence presented at trial, we are not able to determine which of the items listed in paragraph 4 of the complaint belonged to Seedling and which belonged to debtor Douglas Fryer. As a consequence, Seedling has not established that the third of the above requirements of § 727(a)(2)(A)—i.e., that debtors transferred or concealed their own property—is satisfied.

The matter does not end there. Even if the items in question qualified as debtors' property, the evidence presented at trial does not establish that debtors transferred them with actual intent to hinder, delay, or defraud any of their creditors. The fourth of the above requirements, in other words, also is not satisfied.

During the trial all parties seemed to agree that debtors were lured to a meeting by plaintiff wherein this third party recipi-

ent of the items in question was included. The parties appeared to go to great lengths to keep the contents of the meeting out of the record; however, thereafter the transfers in question occurred. The parties appear to purposefully leave the record and this writer in the dark about the purpose and substance of this meeting which we guess holds the key to these transfers.

Without this information, the totality of the circumstances lead us nowhere in determining debtors' intent. With this background we are unable to conclude that debtors made the above transfers and failed to disclose the transactions with their creditors in mind in any way. We speculate that debtor Douglas Fryer believed, rightly or wrongly, that the items belonged to him and transferred them because he believed that it made good business sense to do so. We could also speculate that he acted as he did because he wanted to hinder, delay or defraud his creditors. Perhaps debtors did not disclose the transfers or the other items listed in paragraph 4 of the complaint, not because they wanted to hinder, delay, or defraud their creditors, but because debtor Douglas Fryer was bullheaded and inattentive to detail. It is possible that debtors' bankruptcy counsel was not as attentive to details as he should have been. All this speculation is not a basis for a denial of a discharge.

We conclude in light of the foregoing that Seedling has not established that debtors should be denied a discharge in accordance with the exception found at § 727(a)(2)(A).

### Should Debtors' Bankruptcy Case Be Dismissed?

Seedling also asserts that cause exists to dismiss debtors' chapter 7 case with prejudice because debtors committed bankruptcy fraud by failing to disclose the transfers

of the above items and by failing to disclose the existence of certain other assets on their bankruptcy schedules.

After notice and a hearing, a chapter 7 case may be dismissed "only for cause". 11 U.S.C. § 707(a).

Although the provision does not expressly so provide, "cause" for purposes of § 707(a) includes a lack of good faith. A chapter 7 case may be dismissed "for cause" if the debtor fails to demonstrate good faith in the filing of the bankruptcy petition. *Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207 (3d Cir.2000).

The term "good faith", which is not defined in the Bankruptcy Code, at a minimum requires honest intention. Good faith, or the lack thereof, can be determined only on an *ad hoc* basis and depends on whether the debtor has in some way abused the provisions, purpose, or spirit of bankruptcy law. *Id.* The decision to dismiss a chapter 7 case due to the lack of good faith lies within the sound discretion of the bankruptcy court. *Id.*

Dismissal due to the lack of good faith "should be confined carefully" and should be utilized only in egregious situations, including cases involving concealed or misrepresented assets and/or sources of income. *Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1129 (6th Cir.1991).

Once a party has called a debtor's good faith into question, the burden shifts to the debtor to prove that the bankruptcy petition was filed in good faith. *In re Tamecki*, 229 F.3d at 207. This is not to say that a debtor must affirmatively demonstrate good faith in the absence of any challenge or that dismissal is warranted anytime a debtor fails to affirmatively demonstrate good faith. It is to say only that the burden shifts to the debtor to

prove good faith only after the trustee or a creditor has called debtor's good faith into question and has "put on evidence sufficient to impugn that good faith". *In re Tamecki*, 229 F.3d at 207, n. 2.

We reject Seedling's contention that debtors filed their chapter 7 petition in bad faith and therefore should be dismissed for cause pursuant to § 707(a). In our estimation, Seedling has not come forward with evidence which arguably impugns debtors' good faith in filing a bankruptcy petition.

The crux of Seedling's argument in support of dismissal is the proposition that debtors acted fraudulently in failing to disclose the above transfers of their assets and in failing to disclose the existence of certain other assets of theirs on their bankruptcy schedules. Its argument falters for various reasons.

We determined previously that Seedling failed to establish who owned the assets listed in paragraph 4 of its complaint. As a result, we had no basis for determining that Seedling owned a specific item on the list or that debtors owned them. Without such a determination, we have no basis for concluding that debtors arguably acted fraudulently when they did not disclose the transfers of certain of the items on the list and did not disclose the existence of certain others on their bankruptcy schedules.

Furthermore, even if Seedling had established that debtors owned the assets in question, it still did not come forward with evidence sufficient to impugn debtors' good faith in filing their bankruptcy petition. We previously rejected the contention that debtors acted with actual intent to defraud their creditors when they did not disclose the above transfers or the existence of other assets on their schedules. Based upon the record offered, we are unable to conclude what debtors had in

mind when they failed to do these things. Without proof of actual intent to defraud their creditors, we are hard pressed to see how debtors arguably acted fraudulently in this instance.

We conclude in light of the foregoing that Seedling has not presented sufficient evidence to impugn debtors' good faith in filing their chapter 7 petition. Debtors consequently need not demonstrate that they acted in good faith. Seedling, in short, has not shown that debtors' intention was somehow improper when they filed their petition and that allowing their case to move forward would violate the provisions, spirit, or purposes of the Bankruptcy Code.

An appropriate order shall issue.